1
2
3
4
5

Timothy L. Whiting
P.O. Box 2456
Indio, CA 92202
Tele: (760) 459-9177
Email: tw92240@hotmail.com

In Pro Se

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 9 2020

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TIMOTHY L. WHITING,

Plaintiff,

vs.

ELI ALBEK, in his individual capacity as Owner of the Rancho Mirage Villa Apartments; NICOLA WIELE, in her individual capacity as Property Manager of the Rancho Mirage Villa Apartments; ADN PROPERTIES MANAGEMENT, INC., a California corporation; and DOES 1 through 10,

Defendants.

Case No. 5:19-CV-01542-DMG (SHKX)

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

1. Fair Housing Act (Title VIII of the Civil Rights Act of 1968, Disparate Treatment (42 U.S.C. §§ 3601 et seq.));

2. Civil Rights Act of 1866, 42 U.S.C. § 1981;

3. California Fair Employment and Housing Act, Cal. Govt. §§ 12900 et seq;

4. Fraud and Deceit by Concealment, Cal.Civ.Code §§ 1709 and 1710;

5. Fraudulent, Unfair, and Unlawful Practices (California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.);

6. California's Unruh Civil Rights Act, Cal.Civ.Code §§ 51, 52;

7. Negligence (Negligence Per Se);

8. PUNITIVE DAMAGES—under *Federal Law and California Law*;

UNLIMITED CIVIL CASE

DEMAND FOR JURY TRIAL

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Timothy L. Whiting, in this *First Amended Verified Complaint*, that relates back to the original complaint, hereby complains and alleges upon personal knowledge and belief as his own acts and in some instances on information and belief as to actions of others, as follows:

## I.   **INTRODUCTION**

1.      Plaintiff brings this action against Defendants Eli Albek, Nicola Wiele, ADN Properties Management Inc., and DOES 1 through 10 (collectively, "DEFENDANTS").

2.      At all times mentioned in this complaint, DEFENDANTS are or were owners, persons, principals, operators, agents, managers, and/or landlords of the Rancho Mirage Villa Apartments, a single-story 35-unit multi-family property located at 71760 San Jacinto Drive, Rancho Mirage, California 92270 (the "Subject Property").

3.      The Subject Property is a dwelling within the meaning of 42 U.S.C. § 3602(b).

4.      DEFENDANTS discriminated against Plaintiff on the basis of his race and color, and for his exercise and enjoyment of rights granted and protected under the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601 et seq.; Civil Rights Act of 1866, 42 U.S.C. § 1981; California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq.; Fraud and Deceit, Cal. Civil Code §§ 1709, 1710; California Business and Professions Code § 17200 et seq.; California Unruh Civil Rights Act, Civil Code §§ 51, 52; and Negligence (Negligence Per Se).

5.      DEFENDANTS had control or authority over the terms, conditions, or privileges of rental of Plaintiff's dwelling Unit #302, or in the provision of services, as contemplated by the FHA. See 42 U.S.C. § 3604(b).

6.      DEFENDANTS' discriminatory housing acts, policies, and practices adversely

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

affected and injured Plaintiff who now seeks appropriate relief from this here Court.

## II. JURISDICTION AND VENUE

7.    This Court has jurisdiction under 42 U.S.C. § 3613 and 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367.

8.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because DEFENDANTS either reside or do business in this District and all of the acts and/or omissions complained of herein have occurred or will occur in the District.

## III. ADOPTION BY REFERENCE / EXHIBITS

9.    All exhibits attached to this document are introduced by way of adoption by reference under Fed.R.Civ.P. 10(c).

## IV. NO EXHAUSTION OF REMEDIES REQUIREMENT

10.    Administrative exhaustion is not required under the FHA. 42 U.S.C. § 3613(a)(2).

11.    Under DFEH/FEHA, California Government Code section 12989.1, governing the commencement of civil actions regarding housing discrimination, states, in part, "An aggrieved person may commence a civil action whether or not a complaint has been filed under this part and without regard to the status of any complaint." See also Wood v. Vista Manor Nursing Ctr., No. C 06-01682 JW, 2006 WL 2850045, at *5 (N.D. Cal. Oct. 5, 2006) (distinguishing FEHA claims of employment discrimination from housing discrimination and finding that the Court may hear the latter regardless of administrative exhaustion).

## V. PARTIES

12.    Plaintiff (an African American male) previously resided at the Subject Property, at all relevant times of this action, was a resident of the Central District of California, in the County of Riverside. Plaintiff still resides in the County of Riverside, California.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

13.     Defendant ADN Properties Management, Inc. ("ADN"), is a California corporation with its principal place of business at 18054 Ventura Blvd. #205, Tarzana, CA 91357. ADN is the management company for the Subject Property. ADN may be held vicariously liable for the actions of its agents who were engaged in the business of ADN when they took actions at issue in this case. The current principal mailing address is P.O. Box 571687, Tarzana, CA 91357, can be served at 18054 Ventura Blvd. #205, Tarzana, CA 91357.

14.     Defendant Eli Albek ("ALBEK") (who is of Middle Eastern descent), in his individual capacity, is and was at all times material hereto, an individual doing business as sole owner of ADN and the Subject Property. ALBEK is and was WIELE'S supervisor and accordingly ALBEK may be held vicariously liable for WIELE'S actions. The current principal place of business for ALBEK is 18054 Ventura Blvd. #205, Tarzana, CA 91357. The current principal mailing address for ALBEK is P.O. Box 571687, Tarzana, CA 91357.

15.     Defendant Nicola Wiele ("WIELE"), (who is of Indian descent), in her individual capacity, is and was at all times material hereto, an individual doing business as property manager of the Subject Property. In doing the acts or in omitting to act as alleged in this Complaint, WIELE was acting in the course and scope of her actual or apparent authority granted by ALBEK, or the alleged acts or omissions of WIELE was subsequently ratified and adopted by ALBEK. WIELE was acting as an agent authorized to sign leases on behalf of ALBEK for prospective tenants, to collect rent, utility payments, and other things. The current principal place of business and mailing address for WIELE is 71760 San Jacinto Drive, Unit #203, Rancho Mirage CA 92270.

**Defendant DOES 1 through 10:**

16.     Plaintiff is ignorant of the true names and capacities of defendants sued in this

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

complaint as DOES 1 through 10, inclusive, and therefore sues these defendants by those

fictitious names. Plaintiff will amend this complaint to allege their true names and capacities

when ascertained. Plaintiff is informed and believes on that basis alleges that each of the

fictitiously named DOES 1 through 10 is responsible in some manner for the occurrences alleged

in this complaint were caused by DEFENDANTS conduct.

17.    At all times mentioned in this complaint, unless otherwise alleged, each defendant

was the agent, employee, or co-conspirator of every other defendant, and in doing the acts

alleged in this complaint, was acting within the course, scope, and authority of that agency or

employment, and with the knowledge, permission, and consent of each of the other defendants.

## IV.    FACTS

18.    Plaintiff, at all relevant times to this complaint, was a participant in the Riverside

County Housing Authority ("RCHA") Section 8 Housing Choice Voucher Program ("Section 8")

of the United States Housing Act of 1937, 42 U.S.C. § 1437(f).

19.    Plaintiff is an aggrieved person injured by DEFENDANTS' discriminatory

housing practices as defined under FHA. [42 U.S.C. § 3602(i)(1)].

20.    In or about 2016, ALBEK and WIELE both knew and were fully aware that

Subject Property's Unit #302 and Unit #303 had been renovated to operate electrically from a

shared single electric submeter ("electric submeter" or "electric meter" or "meter").

21.    In or about early 2017, ALBEK and WIELE rented Subject Property Unit #303 to

a Hispanic male tenant. ALBEK and WIELE, in the terms of a written rental agreement at the

beginning of tenancy, openly disclosed to the Hispanic male tenant that Unit #303 did not have

its own separate electric meter. The Hispanic male tenant had resided at the Subject Property in

Unit #303 before Plaintiff moved-in.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

22.     On or about November 28, 2017, Plaintiff and DEFENDANTS signed a Housing Authority County of Riverside "Certified Statement of Agreement" certifying that Plaintiff and DEFENDANTS agree to follow the guidelines as a program participant and/or participating landlord in the Section 8 rental assistance program. Among other terms, the agreement provided that:

- There will be no additional rent paid (other than the amount listed in the lease/rental agreement) by ANY entity or person, including the tenant.

- The lease/rental agreement must specify each utility the tenant is responsible for. The tenant cannot pay for any utility that is the responsibility of the owner.

- Providing a utility service is demonstrated by placing the utility service in the responsible party's name and paying for the service. The responsible party (i.e. person providing the utility) must pay for the utility service.

- There can be no changes to the lease/agreement until after the initial lease term.

(A true and correct copy of the "Certified Statement of Agreement" signed and dated by Plaintiff and WIELE on 11/28/17 is attached as **Exhibit A.**)

23.     On or about December 01, 2017, Plaintiff and WIELE met with Riverside County Housing Specialist Linda Lopez ("Lopez") who was scheduled to perform a Housing Quality Standards (HQS) pre-move-in inspection of Subject Property's Unit #302. Lopez's HQS inspection involved safety issues, such as floors, walls, electrical outlets, lights, plumbing, and furnaces. Subject Property's Unit #302 passed Lopez's HQS inspection. Lopez and WIELE then entered into an oral lease by which WIELE agreed that:

a) Since Unit #302's SCE electric utility account will be in the owner's [ALBEK'S] name then "monthly copies of the SCE bill" must be sent to the RCHA to be made part of Plaintiff's Section 8 file folder.

Page 6 of 31

b) The SCE bill must show that the owner [ALBEK] charges
Plaintiff for "Unit #302's electricity usage only."

24.    On December 01, 2017, Plaintiff and DEFENDANTS entered into a written rental agreement and/or lease (the "Lease") by the terms of which DEFENDANTS rented Unit #302 to Plaintiff for a one year tenancy until November 30, 2018 at the rental rate of $950.00 per month payable on the first day of each month starting 12/1/2017. In the space for designating *Utilities* at Section 5 of the Lease, "Plaintiff "agrees to pay for all utilities and/or services based upon occupancy of the premises except water, trash, sewer, and gas." (A true and correct copy of the "Rental Agreement and/or Lease" dated 12/1/2017 is attached as **Exhibit B**.)

25.    On or about September 04, 2018, about eight months after taking possession of Subject Property's Unit #302, Plaintiff first became aware that Unit #302 possibly did not have its own separate electric submeter as a result of abnormal and high utility electricity costs.

26.    Plaintiff then sent, *via certified mail*, a formal housing complaint letter to DEFENDANTS and RCHA regarding Plaintiff's Unit #302. Plaintiff complained that over a period of eight months, from December 2017 thru August 2018, Plaintiff's electric bills showed abnormal and high costs despite Plaintiff's electricity usage habits having remained about the same. Plaintiff also complained that DEFENDANTS were only supposed to charge Plaintiff's Unit #302 for actual electricity usage only. (A true and correct copy of Plaintiff's letter titled "Abnormal and High Electricity Utility Costs with Probable Overcharges Due To Probable Sub-Metering or Unknown Shared-Metered Connection" dated September 04, 2018 is attached as **Exhibit C**.)

27.    At no time prior to September 04, 2018 did WIELE and ALBEK disclose to Plaintiff (an African American male) in the Lease that Unit #302 did not have its own separate electric meter or shared an electric meter with a Hispanic male tenant in Unit #303.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

28.    At no time prior to September 04, 2018 did Plaintiff know that Unit #302 did not have its own separate electric meter or shared an electric meter with Unit #303. If Plaintiff had known Unit #302 did not have its own separate electric meter, Plaintiff would not have rented the one-bedroom apartment from the DEFENDANTS or otherwise prior to the inception of tenancy rented on the terms in the Lease.

29.    On or about September 16, 2018, on a Sunday afternoon, at about 12:40 p.m., ALBEK showed up unannounced at Subject Property (Plaintiff's Unit #302) disturbing Plaintiff's quiet and peaceful afternoon. ALBEK visibly carried with him several unknown papers and documents in his hand. ALBEK stated that he was "in the neighborhood" and wanted to discuss Plaintiff's housing complaint letter.

30.    ALBEK refused to allow Plaintiff to take possession of any of the documents.

31.    Plaintiff then asked ALBEK, "Does Unit #302 have its own separate meter."

32.    ALBEK then verbally told Plaintiff that after he purchased the Subject Property, Unit #302 and Unit #303 were "renovated." On information and belief, in or about 2016, during the renovation process, ALBEK never requested SCE to install separate electric submeters for Unit #302 and Unit #303 but instead requested that SCE electrically connect Unit #302 and Unit #303 to operate from a single electric submeter.

33.    As our conversation continued, ALBEK now carefully looking over Plaintiff's housing complaint letter, ALBEK stated that "the numbers do not mean anything."

34.    Plaintiff disagreed and explained to ALBEK the numbers represent Plaintiff's "initial normal monthly electricity usage habits" as well as the following months "abnormal and high costs associated with probable electric shared-metering with another tenant's apartment."

35.    ALBEK then attempted to coerce Plaintiff to move into a "one bedroom

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

apartment" that has its own separate electric submeter.

36.     Plaintiff responded by saying "No, because that would require a change in the Lease ending within a couple of months." Plaintiff then reminded ALBEK of the RCHA "Certified Statement of Agreement" that, "There can be no changes to the lease/agreement until after the initial lease term."

37.     ALBEK then attempted to coerce Plaintiff about moving-out the Subject Property early with an incentive that Plaintiff will not have to pay any early move-out penalty fees.

38.     With only two months remaining on Lease, Plaintiff responded by saying, No!

39.     ALBEK then asked Plaintiff, "What do you want?"

40.     Plaintiff responded by saying that the RCHA has said that, "If my apartment does not have its own separate electric meter then I should not have to be paying for electricity, so I want a refund for all electricity payments."

41.     ALBEK responded by saying "No, you have to pay for the electricity you used."

42.     Plaintiff responded by saying, "Well, I am going to stop paying for electricity."

43.     ALBEK responded by saying, "I will have to evict you for non-payment."

44.     With ALBEK continuing to hold his electric billing documents in his hands, Plaintiff then said "Well, Can I please have my requested documents?"

45.     ALBEK responded by saying, "No!" for the reason that Plaintiff had earlier said that Plaintiff will "stop paying for electricity."

46.     Plaintiff then said okay "I will continue to pay for electricity, because I do not want to be evicted."

47.     Plaintiff then asked for a second time for the "requested documents" that ALBEK continued to hold in his hands.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

48.     ALBEK responded again by saying, "No!"

49.     ALBEK then said that he will "send out an electrician tomorrow" (September 17, 2018, Monday) to verify if Units #302 and Unit #303 are single-metered and provide copies of his electrician's verified results to Plaintiff. At this point our conversation ended with ALBEK walking away.

50.     On Monday, September 17, 2018, no electrician visited Plaintiff's Unit #302. Plaintiff never received any verified documentation from ALBEK's electrician that showed Plaintiff's Unit #302 had its own separate electric meter.

51.     On September 30, 2018, according to the Lease requiring "60-Day Notice to Landlord", Plaintiff advised DEFENDANTS of Plaintiff's intent to vacate the premises on or before this date November 30, 2018. In addition, Plaintiff specifically requested an "Itemized List of Deductions and the return of any remaining portion of my security deposit of $500.00 within 21 calendar days of vacating the premises." (A true and correct copy titled "60-Day Notice to Landlord" dated September 30, 2018 is attached as **Exhibit D**.)

52.     On October 24, 2018, the RCHA sent a letter to DEFENDANTS giving notice of termination of contract.

53.     On November 30, 2018, Plaintiff's Lease expired and vacated Subject Property. Plaintiff witnessed that the Hispanic male tenant continued to reside at the Subject Property in Unit #303 even after Plaintiff moved out of adjacent Unit #302.

## V.     PLAINTIFF'S INJURIES AND DAMAGES

54.     WIELE acted with the consent of, under the control of, and/or within her actual and/or apparent authority as agent of, ADN and ALBEK in interfering with the exercise of Plaintiff's fair housing rights.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

55.     ALBEK in acting, refusing to act, or otherwise failing to act as alleged in this Complaint, was acting through his employees, agents, and/or representatives, and is vicariously liable on the basis of the acts and omissions of WIELE.

56.     ADN in acting, refusing to act, or otherwise failing to act as alleged in this Complaint, was acting through its employees, agents, and/or representatives, and is vicariously liable on the basis of the acts and omissions of ALBEK and WIELE.

57.     As a direct and proximate result of the conduct of DEFENDANTS described above, Plaintiff suffered irreparable loss and injury, including, but not limited to, humiliation, embarrassment, mental and emotional distress, economic loss, and deprivation of his rights under the FHA to be free from discriminatory retaliation without being subjected to coercion, intimidation, or interference.

58.     DEFENDANTS' acts were willful, wanton, malicious, oppressive and done with conscious disregard and deliberate indifference for Plaintiff's rights. Therefore, DEFENDANTS' actions justify an award to plaintiffs of punitive damages in an amount to be determined at trial.

59.     DEFENDANTS acted with discriminatory intent in violation of Plaintiff's legal and constitutional rights, without good faith, and have directly and proximately caused Plaintiff's humiliation, mental pain and suffering. As a direct, legal and proximate result of DEFENDANTS' violations of Plaintiff's statutory, constitutional and common law rights, Plaintiff has been damaged in an amount which is not yet known. Plaintiff will seek leave of Court to amend this Complaint when ascertained, or will amend to conform to proof at time of trial.

60.     DEFENDANTS' acted in the face of a perceived risk and knew their housing practices violate Plaintiff's federal and state rights laying a foundation for punitive damages.

Page 11 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

61.    DEFENDANTS' actions caused by the concealment of the shared electric meter, from December 01, 2017 through November 30, 2018, damaged Plaintiff totaling approximately $545.00 in additional higher rent in the form of unlawful utility electricity charges.

## VI.    FIRST CAUSE OF ACTION
### (Violation of the Fair Housing Act, 42 U.S.C. § 3604(b))
### ((Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

62.    The allegations in paragraphs 1 through 61 are adopted.

63.    The Fair Housing Act provides a remedy and relief for persons who have suffered discrimination under the Act. 42 U.S.C. § 3613(c)(l).

64.    Pursuant to 42 U.S.C. § 3604(b), it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling because of race.

65.    DEFENDANTS had a duty to apply all terms, conditions, and privileges of the rules and regulations in a nondiscriminatory manner.

66.    DEFENDANTS violated 42 U.S.C. A. § 3604(b) when they purposely treated Plaintiff differently and less favorably than another Hispanic male tenant because of Plaintiff being African American, as follows: [1] by openly disclosing in the terms of a written rental agreement and/or lease at the beginning of tenancy or upon discovery to the Hispanic male tenant that Unit #303 did not have its own separate electric meter but failing to openly disclose in the terms of a written rental agreement and/or lease at the beginning of tenancy or upon discovery to Plaintiff that Unit #302 did not have its own separate electric meter; [2] by charging Plaintiff who rented a one-bedroom apartment Unit #302 who used less electricity higher costs for electricity usage but charging the Hispanic male tenant who rented a similar structured one-bedroom apartment Unit #303 who used more electricity lower costs for electricity usage, with both Unit #302 and Unit #303 operating unlawfully from a single shared electric meter; and [3]

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

by providing the Hispanic male tenant in Unit #303 with landlord documentation depicting the calculation process or formulas that determine the shared electric meter monthly electricity usage but refusing to provide Plaintiff (an African American) in Unit #302 with the same such documentation.

67.    DEFENDANTS' intentional discrimination in the terms, conditions, or privileges of sale or rental of a dwelling was motivated against Plaintiff, at least in part, because of Plaintiff being African American.

68.    DEFENDANTS' conduct effecting Plaintiff's fair housing rights, caused immediate and irreparable harm to and has proximately caused Plaintiff's emotional pain and suffering, discomfort, inconvenience, economic injury, humiliation, and loss enjoyment of life.

## VII.    SECOND CAUSE OF ACTION
### (Violation of the Fair Housing Act, 42 U.S.C. § 3617)
### (Coercing, Intimidating, Threatening, or Interfering and Unlawful Retaliation)
### (Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

69.    The allegations in paragraphs 1 through 68 are adopted.

70.    DEFENDANTS, and each one of them, were aware of or had become aware of or knew or should have known, on or about September 04, 2018, that Plaintiff had complained about DEFENDANTS' charging high electricity costs and a shared electric meter to the Riverside County Housing Authority.

71.    On or about September 16, 2018 and November 12, 2018 through November 14, 2018, DEFENDANTS retaliated against Plaintiff by interfering with Plaintiff's housing rights in violation of 42 U.S.C. § 3617 by conducting the following adverse actions, without limitation, by: (1) verbally threatening Plaintiff with eviction if Plaintiff stopped paying for the illegally shared meter electricity costs and (2) coerced Plaintiff to continue to pay for high electricity costs until the end of lease in violation of California law.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

72.     DEFENDANTS' retaliatory actions would not have occurred, but for Plaintiff's previous filing of a housing complaint against the DEFENDANTS with the Riverside County Housing Authority.

73.     DEFENDANTS' conduct effecting Plaintiff's fair housing rights, caused immediate and irreparable harm to and has proximately caused Plaintiff's emotional pain and suffering, discomfort, inconvenience, economic injury, humiliation, and loss enjoyment of life.

### VIII.     THIRD CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1981)
### (Race Discrimination)
### (Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

74.     The allegations in paragraphs 1 through 73 are adopted.

75.     At all times relevant, Plaintiff was in a landlord-tenant relationship with DEFENDANTS within the meaning of 42 U.S.C. § 1981.

76.     DEFENDANTS racially discriminated against Plaintiff in violation of § 1981 because DEFENDANTS impaired Plaintiff's rights under his Lease Agreement with an improper motive when DEFENDANTS failed to disclose a shared meter electrical connection.

77.     During the course of Plaintiff's Lease Agreement since approximately December 2017 through November 2018, DEFENDANTS violated Plaintiff's rights by depriving Plaintiff of his right to the enjoyment of all benefits, privileges, terms and conditions of Plaintiff's Lease Agreement as is enjoyed by the Hispanic male tenant, in violation of 42 U.S.C. § 1981.

78.     During the course of Plaintiff's Lease Agreement since approximately December 2017 through November 2018, Plaintiff did not enjoy the same rights benefits, privileges, terms and conditions of his Lease Agreement as is enjoyed by the Hispanic male tenant, in violation of 42 U.S.C. § 1981.

79.     DEFENDANTS treatment, practices and policies directed toward Plaintiff, denied

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by the Hispanic male tenant, in violation of 42 U.S.C. § 1981.

80.    DEFENDANTS treatment, practices and policies directed toward Plaintiff, deprived Plaintiff, an African American, of the same right enjoyed by the Hispanic male tenant to make and enforce a contract by openly disclosing in the Lease Agreement at the beginning of tenancy or upon discovery to the Hispanic male tenant that Unit #303 did not have its own separate electric meter but failing to openly disclose in the Lease Agreement [at Page 1, Paragraph 5, UTILITIES] at the beginning of tenancy or upon discovery to Plaintiff that Unit #302 did not have its own separate electric meter.

81.    Plaintiff's injury would not have occurred without DEFENDANTS' intentional race discrimination and failure to disclose the shared metered connection.

82.    DEFENDANTS' acts were a result of discriminatory intent due to Plaintiff's race, and were done in known violation of Plaintiffs' legal and constitutional rights, that actually played a substantial part in causing Plaintiff's emotional pain and suffering, discomfort, inconvenience, economic injury, humiliation, and loss of enjoyment of life.

### IX.    FOURTH CAUSE OF ACTION
(California Fair Employment and Housing Act ("FEHA"))
(Violation of Cal. Gov't Code §§ 12955.7—Retaliation)
(Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

83.    The allegations in paragraphs 1 through 82 are adopted.

84.    California's Fair Employment and Housing Act ("FEHA") provides a remedy and relief for persons who have suffered from a discriminatory housing practice under the Act. Cal. Gov't Code § 12989.2.

85.    It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on

Page 15 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by Section 12955 or 12955.7.

86.    DEFENDANTS as a result of their conduct effecting Plaintiff's fair housing rights, caused immediate and irreparable harm to and has proximately caused Plaintiff's emotional pain and suffering, discomfort, inconvenience, economic injury, humiliation, and loss of enjoyment of life.

## X.    FIFTH CAUSE OF ACTION
### (Violation of Cal.Civ.Code §§ 1710(3) and 1709)
### (Fraud and Deceit by Concealment)
### (Against Defendants ALBEK, WIELE, and ADN)

87.    The allegations in paragraphs 1 through 86 are adopted.

88.    ALBEK, WIELE and ADN, on December 01, 2017, had a duty to disclose in the Lease that Plaintiff's one-bedroom Unit #302 did not have its own electric meter or shared a single electric meter with another tenant's one-bedroom in Unit #303.

89.    This duty stems from Cal. Civ. Code § 1940.9 "(a) If the landlord does not provide separate…electric meters for each tenants dwelling unit so that each tenants meter measures only the electric…service to that tenants dwelling unit and the landlord or his or her agent has knowledge that…electric service provided through a tenants meter serves an area outside the tenants dwelling unit, the landlord, prior to the inception of the tenancy or upon discovery, shall explicitly disclose that condition to the tenant."

90.    WIELE, ALBEK, and ADN, on December 01, 2017, failed to disclose in the Lease that Plaintiff's Unit #302 did not have its own separate electric meter with an intent to deceive Plaintiff by having Plaintiff, in reliance on Plaintiff's ignorance of the shared electric meter, execute the mutual written rental agreement.

91.    On or about December 01, 2017, WIELE, ALBEK, and ADN's failure to disclose

---

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

that Unit #302 did not have its own separate electric meter or shared an electric meter with Unit #303 materially affected Plaintiff's decision-making with regard to whether to execute on the terms reflected in the Lease. Any reasonable person contemplating renting Unit #302 from DEFENDANTS would consider knowledge of Unit #302 not having its own separate electric meter or the sharing of a single electric meter significant enough to affect the decision to rent.

92.     On or about September 16, 2018, Plaintiff attempted to have ALBEK remedy the fraud by saying that "I want a refund for all electricity payments." But DEFENDANT'S answer was "No!"

93.     DEFENDANTS' concealment was a substantial factor in causing Plaintiff's injuries. As a direct and proximate result of said concealment, Plaintiff suffered sustained injuries and compensatory damages, and in an amount to be proven at trial.

94.     DEFENDANTS fraudulent actions towards Plaintiff were willful and intentional, and were made with the intent to vex, annoy, oppress, and injure Plaintiff, and therefore Plaintiff is entitled to punitive damages. See CA. Civ. Code § 3294.

## XI.    SIXTH CAUSE OF ACTION
### (Violation of California Unruh Civil Rights Act—(Civ. Code, §§ 51, 52))
### (Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

95.     The allegations in paragraphs 1 through 94 are adopted.

96.     DEFENDANTS denied full and equal accommodations, advantages, facilities, privileges, and services to Plaintiff.

97.     The substantial motivating reason for DEFENDANTS' conduct was Plaintiff's race and color. Plaintiff's race and color was a substantial motivating reason for DEFENDANTS' conduct. Plaintiff was harmed and DEFENDANTS' conduct was a substantial factor in causing Plaintiff's harm.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

## XII.    SEVENTH CAUSE OF ACTION
### (Violation of Cal. Bus & Prof. Code § 17200, et seq.)
### (Unlawful, Unfair or Fraudulent Business Act or Practice)
### (Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

98.    The allegations in paragraphs 1 through 104 are adopted.

99.    The violations of the Fair Housing Act, FEHA, Unruh Civil Rights Act, and Cal. Civ. Code § 1940.9 constitute unlawful competition under section 17200.

100.    DEFENDANTS violated the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 et seq., by engaging in a pattern or practice of unlawful discrimination in the operation of the Subject Property and therefore engaged in unfair competition.

## XIII.    EIGHTH CAUSE OF ACTION
### (Negligence and Negligence Per Se)
### (In violation of a Duty of Care Set Forth in a Statute)
### (Against Defendants ALBEK, WIELE, ADN, and DOES 1-10)

101.    The allegations in paragraphs 1 through 100 are adopted.

102.    DEFENDANTS' violations of the Fair Housing Act, FEHA, Unruh Civil Rights Act, and Cal. Civ. Code § 1940.9 supports Plaintiff's claim of negligence per se and would establish a claim of negligence per se under Section 669 of the California Evidence Code.

103.    At all times relevant to this action, each Defendant owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation. At all times, each Defendant owed Plaintiff the duty to act with reasonable care.

104.    In 2016, there existed a statute of the State of California under California Civil Code Section 1940.9(a). That statute was designed to prevent the type of harm that Plaintiff incurred because it provides that a landlord must disclose a shared meter arrangement to the tenant prior to inception of tenancy or upon discovery and must execute written mutual agreements regarding payment for the shared gas or electric service.

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

105.    During the course of Plaintiff's Lease Agreement since approximately December 2017 through November 2018, DEFENDANTS violated the aforesaid statute by failing to disclose a shared meter arrangement in Plaintiff's Lease Agreement [at Page 1, Paragraph 5, UTILITIES] at the beginning of tenancy or upon discovery.

106.    On or about September 04, 2018 about eight months after taking possession of Subject Property's Unit #302, Plaintiff suffered emotional distress because he was "shocked" when he discovered DEFENDANTS' shared meter arrangement, and the arrangement made Plaintiff feel nauseous, upset and helpless.

107.    DEFENDANTS' above-described conduct constituted a breach of DEFENDANTS' duty of care to Plaintiff to ensure that DEFENDANTS did not cause unnecessary or unjustified harm to Plaintiff. It was reasonably foreseeable to all DEFENDANTS that a breach of that duty by DEFENDANTS would cause emotional distress to Plaintiff.

108.    DEFENDANTS' acted negligently and that their negligence was a substantial factor in causing Plaintiff's injuries. As a direct and proximate result of said negligence, Plaintiff suffered sustained injuries and compensatory damages, and in an amount to be proven at trial.

### XIV.    RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against, each of them, the DEFENDANTS for housing discrimination and against the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $100,000 and further demands judgment against each of them, the DEFENDANTS, jointly and severally, for punitive damages, in the amount of $50,000, plus the costs of this action, including reasonably attorney's fees, prejudgment interest on damages award, and such other relief deemed to be just and equitable.

Awards damages, including tangible, intangible and punitive damages as appropriate;

Page 19 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

costs and attorney's fees pursuant to (Civil Code § 52(a).) (Gov. Code § 12989.2.) (Civ. Code§ 3333.) (Civ. Code § 3294(a).) (3613(c)(1)); such other relief as the Court deemed just and proper and a jury trial on all issues so triable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure and Rule 3-6, Local Rules, United States District Court, Central District of California, Plaintiff demands trial by jury for all the issues plead herein so triable.

## PLAINTIFF'S VERIFICATION

I, Timothy L. Whiting, declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matter I believe it to be true.

DATED: November 18, 2020

By:

Timothy L. Whiting
In Pro Se, Plaintiff

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Certified  Statement  of Agreement  dated 11/28/17

Page 21 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES



# HOUSING AUTHORITY OF THE COUNTY OF RIVERSIDE

## CERTIFIED STATEMENT OF AGREEMENT

Section 35 (A) of the United States Criminal Code makes it **a criminal offense** punishable by a maximum of 10 years imprisonment, $10,000 fine or both, to make a false statement or representation to any Department or Agency of the United States as to any matter within their jurisdiction.

Knowing the penalty for making a false statement under the United States Criminal Code (see above), by signing below, I hereby certify that I understand and agree to follow the guidelines listed below as a program participant and/or participating landlord in the Housing Authority's Housing Choice Voucher (aka Section 8) rental assistance program. Failure to abide by these stipulations may result in the recapture of 100% HAP monies paid to the landlord from the beginning of the lease term (for owners) and termination of rental assistance (for the participant):

1. The tenant and landlord may only have ONE written lease/rental agreement with each other at a time. NO Side agreement (verbal or written) of ANY kind may be established during the **initial lease term or anytime thereafter.**

2. There will be no additional rent paid (other than the amount listed in the lease/rental agreement) by ANY entity or person, including the tenant.

3. The lease/rental agreement must be provided to the Housing Authority no later than 10 calendar days after the effective date, signed by all responsible parties.

4. The landlord may not charge or accept, from the tenant or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

5. The lease/rental agreement must specify each utility the tenant is responsible for. The tenant cannot pay for any utility that is the responsibility of the owner.

6. Providing a utility service is demonstrated by placing the utility service in the responsible party's name and paying for the service. The responsible party (i.e. person providing the utility) must pay for the utility service. For example:

   o If the <u>tenant</u> provides a utility service, they MUST place the utility service in their name and pay for the utility service. The utility service may be placed in another AUTHORIZED ADULT household member's name but he/she must be a signor of the lease.
   o If the <u>landlord</u> provides a utility service, the utility service must be in the landlord's name or the name of the corporation, LLC, etc. and be paid by the landlord, LLC, etc. (an exception is allowed when a multifamily property charges residents for a water/trash/sewer utility service based on a pro-ration of use. In these cases, the utility will be in the name of the corporation, LLC, etc. and each tenant will be billed monthly via an established utility billing service).

Page 22 of 31

---

7. The lease/rental agreement must state each appliance the tenant is responsible for.

8. There can be no changes to the lease/agreement until after the initial lease term.

9. After the initial lease term, any change(s) to the tenancy must be in writing and legally served to the tenant and a copy MUST be given to the Housing Authority. NOTE: The minimum notice period for a rent increase is **60 days**.

10. Any mail delivered to the assisted unit must only be for residents of the household. Mail delivered for individuals who are not part of the household is not permitted.

OWNER SIGNATURE _____ DATE 11/28/17

TENANT SIGNATURE _____ DATE 11/28/17

Rev 01/27/14 -cvh,ch,PTT, RTA E/W

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

RENTAL  AGREEMENT  AND/OR LEASE  dated on 12/01/2017

Page 24 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

## ⚓ RENTAL AGREEMENT AND/OR LEASE ⚓

Landlord/Lessor/Agent  Eli Albek

Tenant(s)/Lessee  Timothy Whiting                                    Apartment Number  302

Tenant(s)/Lessee

Apartment Number  302

Apartment Address  71760 San Jacinto Drive

City  Rancho Mirage                    State  CA    Zip  92270

Monthly Rental Rate  $ 950.00          This agreement shall commence on  12/1/2017          and continue  (check one below)

Rental Due Date  1st of month          A  ☐  Month to Month Agreement

Security Deposit  $ 500.00 *ok Per Eli    B  ☑  Until  11/30/2018          at which time thereafter shall become a month to

Late Charge  10% of rent              month tenancy upon written approval of the landlord. If Tenant should move from premises prior to the
                                       expiration date he shall be liable for all the rent due until such time the apartment is occupied
Parking Space  1 space allowed          by a Landlord-approved resident and/or expiration of said time period, whichever is shorter.

† This Rental Agreement and/or Lease shall evidence the complete terms and conditions under which the parties whose signatures appear below have agreed. Landlord/Lessor/Agent shall be referred to as "OWNER" and Tenant(s)/Lessee(s) shall be referred to as "RESIDENT." As consideration for this agreement, OWNER agrees to rent/lease to RESIDENT and RESIDENT agrees to rent/lease from OWNER for use SOLELY AS A PRIVATE RESIDENCE, the premises listed above. RESIDENT acknowledges that any false statements found in RESIDENT's application shall constitute a non-curable breach of this agreement. RESIDENT hereby agrees to complete an updated application including a census as to the occupants in the unit upon seven days request of OWNER.

2. PAYMENTS. Rent and/or other charges are to be paid at the office or apartment of the manager of the building or at such other place designated in writing by OWNER. For the safety of the manager, all payments are to be made by check or money order and no cash shall be acceptable. OWNER acknowledges receipt of the First month's rent of  $ 950.00     and a Security Deposit of $ 500.00     for a total payment of $ See notes     All payments are to be made payable to  Eli Albek     and delivered to Nicola Weie 71760 San Jacinto Drive #203 Rancho Mirage, CA 92270

California Telephone number 760-567-7863     who is usually available on the following days Monday thru Friday by appointment  during the following hours  9:00am to 5:00pm

3. LATE CHARGE/RETURNED CHECKS. Resident acknowledges that Owner will incur certain administrative costs in connection with a late Rental payment, and that the amount of such administrative costs would be extremely difficult or impractical to ascertain. Therefore Parties agree that if Resident fails to pay the rent in full by the end of the  3  day after it is due, Resident shall pay a late charge of $ 10% of rent  per day and the parties agree that that amount is a reasonable amount for such administrative costs. Resident further agrees that such administrative costs are deemed additional rent. If Owner elects to accept rent after the tenth day after it is due, payment in a form other than by personal check may be required. Owner does not waive the right to insist on payment of rent in full or the day it is due. In the event Resident's check is dishonored by the bank for any reason. Resident shall pay a returned check charge of $ 25.00  as additional rent. The same late charge stated above will be imposed as additional rent if the returned check causes the rent to be late. Owner may require future payments to be in a form other than a personal check in the event of a returned check.

4. SECURITY DEPOSITS. The Security Deposit shall not exceed two times the monthly rent for unfurnished apartments or three times the monthly rent for furnished apartments. The total of the above deposits shall secure compliance with the terms and conditions of this agreement and shall be refunded to RESIDENT within 21 days after the premises have been completely vacated less any amount necessary to pay OWNER: a) any unpaid rent, b) cleaning costs, c) key replacement costs, d) costs for repair of damages to apartment and/or common areas above ordinary wear and tear, and e) any other amount legally allowable under the terms of this agreement. A written accounting of said charges shall be presented to RESIDENT within 21 days of move-out. If deposits do not cover such costs and damages, the RESIDENT shall immediately pay said additional costs for damages to OWNER. During the term of tenancy, RESIDENT agrees to increase the deposit upon 30 days written notice by an amount equal to any future increases in rent and/or an amount necessary to cover the cost of rectifying any damage or expense for which RESIDENT is responsible. Security deposit is not to be used as last month's rent.

5. UTILITIES. RESIDENT agrees to pay for all utilities and/or services based upon occupancy of the premises except  Water, trash, sewer, gas

6. OCCUPANTS. Guest(s) staying over 14 days cumulative or longer during any 12-month period, without the OWNER's written consent, shall be considered a breach of this agreement. ONLY the following listed individuals and/or animals. AND NO OTHERS shall occupy the subject apartment for more than 14 days unless the expressed written consent of OWNER is obtained in advance. (the 14 day period maybe extended by local Rent Control Laws)  Tenants     RESIDENT shall pay additional rent at the rate of $100.00 per month or 25% (or the amount allowed under rent control) of the current monthly rent, whichever amount is greater for the period of time that each additional guest in excess of the above named shall occupy the premises. RESIDENT shall pay the same additional monthly rent for each additional animal in excess of the above named animal(s), which shall occupy the premises. Acceptance of additional rent or approval of a guest shall not waive any requirement of this agreement or convert the status of any "guest" into a RESIDENT.

7. PETS AND FURNISHINGS. Furnishings - No liquid-filled furniture of any kind may be kept on the premises. If the structure was built in 1973 or later RESIDENT may possess a waterbed if he maintains waterbed insurance valued at $100,000.00 or more. RESIDENT must furnish OWNER with proof of said insurance. RESIDENT must also comply with Civil Code Section 1940.5. Resident shall not keep on premises a receptacle containing more than ten gallons of liquid, heighth combustible materials or other items which may cause a hazard or affect insurance rates such as musical instruments or other items of unusual weight or dimension. RESIDENT also agrees to carry insurance deemed appropriate by OWNER to cover possible losses caused by using said items. Pets – No animal, fowl, fish, reptile, and/or pet of any kind shall be kept on or about the premises for any amount of time, without obtaining the prior written consent and meeting the requirements of the OWNER. Said consent, if granted, shall be revocable at OWNER's option upon giving a 30-day written notice. In the event laws are passed or permission is granted to have any item prohibited by this agreement or if for any reason such item exists on the premises, there shall be minimum additional rent of $25.00 a month for each such item if another amount is not stated or this agreement. In the event laws are passed or permission is granted to have a pet and/or animal of any kind, an additional deposit in the amount of $ NO PETS     shall be required along with the signing of OWNER's 'PET AGREEMENT.'

8. PARKING/STORAGE. When and if RESIDENT is assigned a parking space OWNER'S property, the parking space shall be used exclusively for parking of passenger automobiles and/or those approved vehicles listed on RESIDENT's 'Application to Rent/Lease' or attached hereto. RESIDENT may not wash, repair or paint in the parking space or at any other common areas on the premises. (RESIDENT may not assign, sublet, or allow RESIDENT's guest(s) to use this or any other parking space.) RESIDENT is responsible for oil leaks and other vehicle discharges for which, RESIDENT shall be charged for cleaning if deemed necessary by OWNER. Only vehicles that are operational may park in their assigned space.

9. NOISE / ACTIVITY. RESIDENT agrees not to cause or allow any noise or activity on the premises that might disturb the peace and quiet enjoyment of another RESIDENT. RESIDENT shall not violate any law or use the premises for the use, storage, possession, manufacturing or selling of illicit drugs. Said noise and/or activity shall be a breach of this Agreement.

AOA Form No. 101 - Revised 12/15 - Copyright 2015  Apartment Owners Association of California, Inc - www.aoausa.com
• San Fernando Valley (818) 988-9200 • Los Angeles (323) 937-8811 • Long Beach (562) 597-2422 • Garden Grove (714) 539-6000 • San Diego (619) 280-7007 • Northern California (510) 769-7521

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

10. **LOITERING AND PLAY** Lounging, playing, or unnecessary loitering in the halls, on the front steps, or in the common areas in such a way as to interfere with the free use and enjoyment, passage or convenience of another RESIDENT is prohibited.

11. **DESTRUCTION OF PREMISES.** If the premises become totally or partially destroyed during the term of this Agreement so that RESIDENT's use is seriously impaired, RESIDENT or OWNER may terminate this Agreement immediately upon three-day written notice to the other.

12. **CONDITION OF PREMISES** RESIDENT acknowledges that he has examined the premises and that said premises, all furnishings, fixtures, furniture, plumbing, heating, electrical facilities, all items listed on the attached inventory sheet, if any, and/or all other items provided by OWNER are all clean, and in good satisfactory condition except as may be indicated elsewhere in this Agreement. RESIDENT agrees to keep the premises and all items in good order and condition and to immediately pay for costs to repair and/or replace any portion of the above damaged by RESIDENT, his guests and/or invitees, except as provided by law. At the termination of this Agreement, all of the above-enumerated items in this provision shall be returned to OWNER in clean and good condition except for reasonable wear and tear, the premises shall be free of all personal property and trash not belonging to OWNER. It is agreed that all dirt, holes, tears, burns, or stains of any size or amount in the carpets, drapes, walls, fixtures, and/or any other part of the premises, do not constitute reasonable wear and tear.

13. **MAINTENANCE AND ALTERATIONS.** RESIDENT shall not paint, wallpaper, alter or redecorate, change or install locks, install antenna or other equipment, screws, fastening devices, excessively large nails, or adhesive materials, place signs, displays, or other exhibits, on or in any portion of the premises without the written consent of the OWNER except as may be provided by law. RESIDENT shall deposit all garbage and waste in a clean and sanitary manner into the proper receptacles as provided and shall cooperate in keeping the garbage area neat and clean. RESIDENT shall be responsible for disposing of items of such size or nature as is not normally acceptable by the garbage hauler for the building. RESIDENT shall be responsible for keeping the garbage disposal clean of chicken bones, toothpicks, match sticks, celery, pits, grease, metal, vegetable ties, and all other items that may tend to cause stoppage of the mechanism. RESIDENT shall pay for the cleaning out of any plumbing fixture that may need to be cleared of stoppage and for the expense or damage caused by the stopping of waste pipes or overflow from bathtubs, washbasins, toilets, or sinks, if caused by negligence or misuse by RESIDENT or their guests. Tenant must notify landlord with a written notice stating what item(s) need service or repair and give landlord a reasonable opportunity to service or repair that item(s). Should any charges be incurred by the City as a result of not notifying the Landlord in writing of such needed service or repairs, tenant shall be responsible for a minimum of $201.50 for each occurrence plus any additional fines or inspection fees imposed by a government office as a result of RESIDENT not notifying OWNER in writing of any deficiencies with the residence.

14. **SMOKE/CARBON MONOXIDE DETECTORS** The rental unit is equipped with properly functioning smoke and carbon monoxide detectors. Resident agrees to test the smoke and carbon monoxide detectors in the rental unit monthly for proper function. Resident agrees not to interfere with their normal function or disable any detectors in any manner.

15. **HOUSE, POOL, AND LAUNDRY RULES** RESIDENT shall comply with all house, pool, pet, and laundry rules attached to this agreement which may be changed from time to time. These rules shall apply to, but are not limited to, noise odors, disposal of trash, pets, parking, use of common areas, and storage of toys, bicycles, tools, and other personal items (including signs and laundry), which must be kept inside and out of view. OWNER shall not be liable to RESIDENT for any violation of such rules by any other RESIDENTS or persons. Rights of usage and maintenance of the laundry room and/or pool and pool area are gratuitous and subject to revocation by OWNER at any time.

16. **CHANGE OF TERMS** The terms and conditions of this agreement are subject to future change by OWNER after the expiration of the agreed lease period upon 30 days written notice setting forth such change and delivered to RESIDENT. Any changes are subject to laws in existence at the time of the Notice of Change of Terms.

17. **TERMINATION** After expiration of the leasing period, this agreement is automatically renewed from month-to-month upon written approval of the OWNER. This Agreement may by either party with a written 30-day notice of intention to terminate. If tenancy exceeds one year, the owner shall give a written 60-day notice to terminate. Where laws require "just cause," such just cause shall be so stated on said notice. The premises shall be considered vacated only after all areas including storage areas are clear of all RESIDENT'S belongings, and keys and other property furnished for RESIDENT'S use are returned to OWNER. Should the RESIDENT hold over beyond the termination date or fail to vacate all possessions on or before the termination date, RESIDENT shall be liable for additional rent and damages which may include damages due to OWNER'S loss of prospective new RENTERS.

18. **POSSESSION** If OWNER is unable to deliver possession of the Apartment to RESIDENT on the agreed date, because of the loss or destruction of the Apartment or because of the failure of the prior RESIDENT to vacate or for any other reason, the RESIDENT and/or OWNER may immediately cancel and terminate this agreement upon written notice to the other party at their last known address, whereupon neither party shall have liability to the other, and any sums paid under this Agreement shall be refunded in full. If neither party cancels, this Agreement shall be pro-rated and begin on the date of actual possession.

19. **INSURANCE: RESIDENT** acknowledges that OWNER'S insurance does not cover personal property damage caused by fire, theft, rain, war, acts of God, acts of others, and/or any other causes, nor shall OWNER be held liable for such losses. RESIDENT HEREBY AGREES TO OBTAIN HIS OWN INSURANCE POLICY TO COVER ANY PERSONAL LOSSES. This does not waive OWNER'S duty to prevent personal injury or property damage where that duty is imposed by law, however, RESIDENT'S failure to maintain said policy shall be a complete waiver of RESIDENT'S rights to seek damages against OWNER for above stated losses.

20. **RIGHT OF ENTRY AND INSPECTION** OWNER or OWNER'S Agent by themselves or with others, may enter, inspect and/or repair the premises at any time in case of emergency or suspected abandonment. OWNER shall give 24 hours advance notice and may enter for the purpose of showing the premises during normal business hours to prospective renters, buyers, lenders, for private alarm inspections, and/or for normal inspector and repairs. OWNER is permitted to make all alterations, repairs and maintenance that in OWNER'S judgment is necessary to perform. In addition, OWNER has the right to enter pursuant to Civil Code Section 1954. If the work performed requires that RESIDENT temporarily vacate the unit, then RESIDENT shall vacate for the temporary period upon being served a 7-day notice by OWNER. RESIDENT agrees that in such event RESIDENT will be solely compensated by a corresponding reduction in the rent for those many days that RESIDENT was temporarily displaced. No other compensation shall be due to the RESIDENT. If the work to be performed requires the cooperation of the RESIDENT to perform certain tasks, then RESIDENT shall perform those tasks upon receiving a 24-hour written notice. (EXAMPLE: removing food items from cabinets so that the unit may be sprayed for pests.) Upon 24 hours notice, RESIDENT hereby agrees to lend OWNER the keys to the premises for the purpose of having a duplicate made for OWNER'S use.

21. **ASSIGNMENT: RESIDENT** agrees not to transfer, assign, or sublet the premises or any part thereof and hereby appoints and authorizes the OWNER as his agent and/or by OWNER'S own authority to evict any person claiming possession by way of any alleged assignment or subletting.

22. **PARTIAL INVALIDITY.** Nothing contained in this Agreement shall be construed as waiving any of RESIDENT'S or OWNER'S rights under the law. If any part of this Agreement shall be in conflict with the law, that part shall be void to the extent that it is in conflict, but shall not invalidate this Agreement nor shall it affect the validity or enforceability of any other provision of this Agreement.

23. **NO WAIVER: OWNER'S** acceptance of rent with knowledge of any default by RESIDENT or waiver by OWNER of any breach of any term or condition of this Agreement shall not constitute a waiver of subsequent breaches. Failure to require compliance or to exercise any right shall not be construed as a waiver by OWNER of said term, condition, and/or right, and shall not affect the validity or enforceability of any other provision of this Agreement.

24. **ATTORNEY'S FEES** If any legal action or proceeding be brought by either party to this agreement, the prevailing party shall be reimbursed for all reasonable attorneys' fees up to but not more than $500 in addition to other damages awarded.

25. **ABANDONMENT** California Civil Code Section 1951.2 shall govern Abandonment. If any rent has remained unpaid for 14 or more consecutive days and the OWNER has a reasonable belief of abandonment of the premises, OWNER shall give 18 days written notice to RESIDENT at any place (including the rented premises) that OWNER has reason to believe RESIDENT may receive said notice of OWNER'S intention to declare the premises abandoned. RESIDENT'S failure to respond to said notice as required by law shall allow OWNER to reclaim the premises.

26. The undersigned RESIDENTS are jointly and severally responsible and liable for all obligations under this agreement and shall indemnify OWNER for liability caused by the actions (omission or commission) of RESIDENTS, their guests and invitees.

27. Pursuant to **Section 1785.26 of the California Civil Code** as required by law, you are hereby notified that a negative credit report reflecting on your credit history may be submitted to a credit reporting agency, if you fail to fulfill the terms of your credit obligation. RESIDENT expressly authorizes OWNER/AGENT, including a collection agency, to obtain Resident's consumer credit report, which OWNER/AGENT may use if attempting to collect past due rent payments, late fees, or other charges from Resident, both during the term of the Agreement and thereafter.

28. **Lead Warning Statement:** Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips and dust pose health hazards if not managed properly. Lead

AOA Form No. 101 (Revised 03/15) − Copyright 2015 − Apartment Owners Association of California, Inc. − www.aoausa.com
• San Fernando Valley (818) 988-9200 • Los Angeles (323) 937-8811 • Long Beach (562) 597-2422 • Garden Grove (714) 539-6000 • San Diego (619) 280-7007 • Northern California (510) 769-7521

**PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES**

exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, OWNERS must disclose the presence of known lead-based paint hazards in the dwelling. RESIDENTS must also receive a federally approved pamphlet on lead poisoning prevention.

**OWNER/AGENT DISCLOSURE** (Initial)

___EA___ OWNER'S initials (on left) mean OWNER has no knowledge of lead-based paint and/or lead-based hazards in or on the Premises and OWNER has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in or on the Premises, and

_____ RENTER'S initial (on left) indicate that RENTER has received a copy of a 'Protect Your Family from Lead in Your Home'; and that RENTER shall notify OWNER promptly in writing of any deteriorating and/or peeling paint.

29. **MOLD**: The OWNER/AGENT has inspected the unit prior to lease and knows of no damp or wet building materials and knows of no mold contamination. Resident agrees to: accept full responsibility and maintain the premises in a manner that prevents the occurrence of an infestation of mold in the premises. Resident also agrees to immediately report to the OWNER/AGENT any evidence of water leaks, excessive moisture or lack of proper ventilation and evidence of mold that cannot be removed by cleaning.

30. **ADDITIONS AND EXCEPTIONS** Security Deposit of $500 received. $450.00 waived per Eli. Total due at move in is $321.00.

_____

_____

_____

_____

31. **NOTICES** All notices to RESIDENT shall be served at RESIDENT'S apartment ; house whether or not RESIDENT is present at the time of delivery and all notices to OWNER AUTHORIZED PERSON shall be served by first class mailing to:

Person Authorized To Manage Property:

Name Nicole Wiele _____ Address 71760 San Jacinto Drive #203 Rancho Mirage, CA 92270

Phone Number 780-567-7863

Owner of property or a person who is authorized to act for and on behalf of the owner for the purpose of service of process and for the purpose of receiving and receipting for all notices and demands.

Name Nicole Wiele _____ Address 71760 San Jacinto Drive #203 Rancho Mirage, CA 92270

Phone Number 780-567-7863

Person or Entity Authorized to Receive Payment of Rent:

Name Nicole Wiele _____ Address 71760 San Jacinto Drive #203 Rancho Mirage, CA 92270

Phone Number 780-567-7863

32. **INVENTORY**: The Apartment contains the following items for use by RESIDENT: Stove/Oven, Refrigerator, Ceiling fan, 1 wall air conditioner in bedroom

RESIDENT further acknowledges that the subject premises are furnished with the additional furnishings listed on the attached inventory and that said attached inventory is hereby made part of this agreement.

33. **RESIDENT** acknowledges receipt of the following, which shall be deemed a part of the Agreement (Please check)

| | | |
|---|---|---|
| ☑ House Rules | ☑ Pet Agreement | ☐ Garage Door Opener _____ |
| ☑ Laundry Rules | ☑ Pool Rules | ☐ Other: _____ |
| ☐ Mailbox Keys | ☑ Apartment Keys | |

34. **ENTIRE AGREEMENT**: This Agreement constitutes the entire Agreement between OWNER and RESIDENT. No oral agreements have been entered into, and all modifications or notices shall be in writing to be valid. The undersigned Residents are jointly and severally responsible for all obligations under this agreement and shall indemnify Owner for liability caused by the actions (omission or commission) of residents, their guests and invitees. Renter has relied on his own judgment in entering into this agreement.

35. **NOTICE**: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

36. **RECEIPT OF AGREEMENT**: The undersigned RESIDENT hereby certifies that he/she is fluent in the English language and has read and completely understands this Agreement and hereby acknowledges receipt of a copy of this "Rental Agreement and/or Lease" ( _____ ) RESIDENT'S initials

OR Pursuant to California Civil Code 1632, which requires translation of specified contracts or agreements that are negotiated in Spanish, Chinese, Vietnamese, Tagalog or Korean.

( _____ ) Resident's initials on left hereby acknowledge that this agreement was translated and interpreted in their foreign language of: _____

Printed Name of Interpreter _____    Signature of Interpreter _____    Date _____

| | | | |
|---|---|---|---|
| Eli Albek | 12/1/2017 | Timothy Werling | 12/1/2017 |
| Owner/Agent | Date | Resident | Date |
| Nicole Wiele | 12/1/2017 | *Timothy Werling* | 12/1/2017 |
| Owner/Agent | Date | Resident | Date |
| *Nicole Wiele* 12/1/2017 | | | |
| Owner/Agent | Date | Resident | Date |

NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR THE ADEQUACY OF ANY PROVISION IN THIS AGREEMENT. IF YOU DESIRE LEGAL ADVICE, CONSULT YOUR ATTORNEY.

AOA Form No. 101 (Revised 2/3/15) - Copyright 2010 - Apartment Owners Association of California, Inc. - www.aoausa.com

**PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**
Plaintiff's letter titled, "Abnormal and High Electricity Utility Costs
With Probable Overcharges Due To Probable Sub-Metering
Or Unknown Shared-Metered Connection" dated September 04, 2018

Page 28 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

Timothy Whiting (Tenant)
71760 San Jacinto Drive, Apt. 302
Rancho Mirage, CA 92270
Phone: (760) 459-9177
Email: tw92240@hotmail.com

September 4, 2018

**Certified Mail:**

Rancho Mirage Villa Apartments
Property Manager Nicole Wiele
71760 San Jacinto Dr., Apt. 203
Rancho Mirage, CA 92270

Re: **Abnormal and High Electricity Utility Costs With Probable Overcharges Due To Probable Sub-Metering or Unknown Shared-Metered Connection**

Dear Landlord and Ms. Wiele,

I am writing a formal complaint letter regarding my apartment electricity utility costs. Over a period of eight months, from December 2017 thru August 2018, my electricity billing has showed abnormal and high costs that has ranged from a decrease of more than 70% to an increase of over 634% despite my electricity usage habits having remained about the same. According to my lease, I should be charged for my actual electricity usage only which excludes outside common areas or added costs from another Tenant's shared-meter.

My abnormal and high costs electricity usage is itemized below:

- December 2017 bill $18.38 compared with January 2018 bill $37.69.
  This amounted to an increase of nearly 105.06% or $19.31 in change of costs.

- January 2018 bill $37.69 compared with February 2018 bill $37.72.
  This amounted to an increase of nearly 0.08% or $00.03 in change of costs.

- February 2018 bill $37.72 compared with March 2018 bill $27.10.
  This amounted to a decrease of nearly 28.15% or $10.72 in change of costs.

- March 2018 bill $27.10 compared with April 2018 bill $7.94.
  This amounted to a decrease of nearly 70.70% or $19.16 in change of costs.

- April 2018 bill $7.94 compared with May 2018 bill $58.35.
  This amounted to an INCREASE of nearly 634.89% or $50.41 in change of costs.

- May 2018 bill $58.35 compared with June 2018 bill $62.54.
  This amounted to an INCREASE of nearly 7.18% or $4.19 in change of costs.

- June 2018 bill $62.54 compared with July 2018 bill $91.92.
  This amounted to an INCREASE of nearly 46.96% or $29.38 in change of costs.

- July 2018 bill $91.92 compared with August 2018 bill $113.06.
  This amounted to an INCREASE of nearly 23.00% or $21.14 in change of costs.

As a result of the abnormally high electricity costs with steady INCREASES for the next four straight months, I now request landlord documentation depicting the calculation process or formules that determine my monthly electricity usage. This should include the opening and closing readings for my electric meter for the months listed above. In addition, I seek verification that I am a sub-metered tenant and/or that my apartment's electric meter is not a shared meter that connects to another tenant's electric meter in the apartment building complex.

Sincerely,

Timothy Whiting (Section 8 Participant)

cc: Felisa Diaz., Housing Specialist, Indio Office, Housing Authority of the County of Riverside
cc: Cesar Martinez, Housing Specialist, Indio Office, Housing Authority of the County of Riverside
cc: Lina Vental Love, Housing Specialist, Indio Office, Housing Authority of the County of Riverside

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT D**
60-Day Notice to Landlord dated September 30, 2018

26

27

28

Page 30 of 31

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

███████████████████████████████████████████████████████

### 60-Day Notice to Landlord

Date: <u>September 30, 2018</u>

Owner/Landlord's Name: <u>Eli Albek</u>

Manager's Name: <u>Nicola Wiele</u>

Address of Rental Unit: <u>Rancho Mirage Villa Apartments</u>
                        <u>71760 San Jacinto Drive, Apt# 302, Rancho Mirage, CA 92270</u>

According to the terms of my lease requiring 60-day notice, you are hereby advised of my intent
to vacate the premises on or before this date November 30, 2018.

I will be cleaning the premises so as to vacate it in a good condition. Please send me specific
move-out cleaning instructions if you have any. I will remove my personal possessions and turn
in my keys on or before this date November 30, 2018.

I am requesting an *Itemized List of Deductions* and the return of any remaining portion of my
security deposit of $<u>500.00</u> within 21 calendar days of vacating the premises.

The forwarding address for the return of my security deposit is:

**Timothy Whiting**
**P.O. Box 2456, Indio, CA 92202**

If you have any questions, please contact me at <u>(760) 459-9177</u> or at my
email: <u>tw92240@hotmail.com</u>

                              Tenant's Name: Timothy Whiting
                                     (Section 8 Participant)

                              Tenant's Signature: *Timothy J. Whiting*

   cc: Cathy Martinez, *HOUSING AUTHORITY of the County of Riverside, Indio CA*

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

# PROOF OF SERVICE BY MAIL

**In re**: FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

**Caption:**  Timothy L. Whiting v. Eli Albek, et al.

Case No. 5:19-cv-01542-DMG (SHKx)

**Filed**: UNITED STATES DISTRIC COURT,

CENTRAL DISTRICT COURT OF CALIFORNIA

STATE OF CALIFORNIA  )
                      ) ss.
COUNTY OF RIVERSIDE   )

I am a citizen of the United States and a resident of the City of Indio, County of Riverside; I am over the age of eighteen years and not a party to the within action; my address is 82541 Yeager Rd., Indio, California 92201. On this date, I served the persons interested in this action by placing one copy of the above-entitled document in sealed envelopes with first-class postage fully prepaid in the United States post office mailbox at Indio, California, addressed as follows:

> Michael S. Geller (SBN 178113)
> Law Office of Michael Geller Inc.
> 3576 Arlington Ave., Suite 210
> Riverside, California 9506

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Executed at Indio, California,** _Nov 18,_____ ,2020.

_WILLIE L. WHITING JR_
PRINT NAME

_Willie L. Whiting_
SIGNATURE

EXPRESS MAIL

UNITED STATES POSTAL SERVICE ®

www.usps.com

Label 127R, February 2006

**FROM:**

Timothy L. Whitty
P.O. Box 2456
Indio, CA 92202

United States District Court
Central District of California
Office of the Clerk
255 East Temple Street, Room 1
Los Angeles, California 900

PRESS FIRMLY

♻ This envelope is made from post-consumer waste. Please recycle - again.

EJ 523 236 154 US